UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WALTER LEE JONES #235079,

    Plaintiff,                                         Hon. Paul L. Maloney

v.                                                  Case No. 1:20-cv-421

JUSTIN SIWANOWICZ,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action pursuant to 42 U.S.C. § 1983 by a prisoner incarcerated with the Michigan Department of Corrections (MDOC). Plaintiff alleges that Defendant Corrections Officer Justin Siwanowicz retaliated against him in violation of the First Amendment and violated his Eighth Amendment rights. The alleged constitutional violations occurred at the Earnest C. Brooks Correctional Facility (ECF), where Plaintiff is presently incarcerated.

Now before me is Defendant Siwanowicz's Motion for Summary Judgment. (ECF No. 18.) Plaintiff has responded (ECF No. 23), and Defendant did not reply. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that Defendant's motion be **DENIED**.

**I. Background**

In 2019, Plaintiff was twice elected to six-month terms as Block Representative for his housing unit. (ECF No. 1 at PageID.4.) A Block Representative is a voluntary, elected position in which the individual assists prison staff "in identifying and resolving problems which exist in the unit." Mich. Dep't. of Corr. P.D. 04.01.150, ¶¶ B, C. (03/05/07). Block Representatives also participate in the Warden's Forum, a monthly meeting that serves to "assist the Warden in

identifying and resolving problems which exist in the general population of the institution." *Id.*, ¶¶ L–P. During his second term, commencing on August 1, 2019, Plaintiff was also elected Chairman of the Warden's Forum. (*Id.*)

Defendant worked in Plaintiff's housing unit in December 2019 and January 2020. Plaintiff alleges that, on several occasions during this time, he heard or observed Defendant make disparaging, racist, and sexual remarks to prisoners over the unit's intercom system. (*Id.* at PageID.4–5.) Plaintiff claims that, acting in his capacity as Block Representative, he orally complained on his own behalf and for other inmates to unit prison counselors and the resident unit manager about Defendant's conduct. Plaintiff further alleges that he spoke to ranking custody supervisors about Defendant's conduct and wrote a letter to ECF's warden, deputy warden, and assistant deputy wardens regarding the matter. (*Id.* at PageID.5.)

Plaintiff alleges that on January 12, 2020—approximately 12 days after having reported Defendant's actions to prison authorities—Defendant yelled to Plaintiff in a loud voice, "Don't be a snitch on your way to chow," as he was crossing the base, along with other prisoners, to exit his unit to attend early lunch. (*Id.* at PageID.5–6.) Plaintiff turned and asked Defendant to repeat herself, and as he approached the officer's desk, Defendant stated, "I know you are the one who's been snitching on me." (*Id.* at PageID.6.) Plaintiff alleges that Defendant made her "snitch" remarks in a manner that attracted other prisoners' attention. Plaintiff alleges that he overheard several prisoners state, "The C/O said J.B. is snitching to the administration." Plaintiff alleges that Defendant knew or should have known that the "snitch" label is something that would follow him throughout the MDOC. (*Id.*)

Plaintiff alleges that, sometime after the "snitch" incident, an unidentified source slipped a kite under his door. The kite stated that Plaintiff had to pay $100 to stay on the yard and that

2

"snitches pay up or get a 'buck-fifty'"—apparently a reference to a type of facial wound requiring 150 stitches to repair. Plaintiff alleges that, although he has no way of knowing who sent the note, he fears being attacked because Michigan prisoners labeled "snitches" are normally assaulted "'buck-fifty' style." (*Id.* at PageID.7.)

Plaintiff alleges that on the same date Defendant made the "snitch" comment (apparently at the same time she made the comment), he attempted to resolve the matter with Defendant, informing her that he would not tolerate her unprofessionalism and would be sure to let the warden know about it. Defendant immediately responded, "Not before I write the ticket," and asked Plaintiff for his I.D. card. When Plaintiff returned from lunch, he wrote a letter to prison officials alerting them to Defendant's threatening and retaliatory words. Defendant followed through on her threat to write a ticket the same day, and issued Plaintiff a class II misconduct ticket for disobeying a direct order (DDO), in violation of MDOC Policy Directive 03.03.105. (*Id.* at PageID.8.) Defendant reported in the ticket that as Plaintiff was attempting to leave the unit early for chow, she asked him where he was going, and he responded, "chow." (ECF No. 19-2.) Defendant said that Plaintiff responded that he was allowed to go early because he was the "Block Rep." Defendant said that she then gave Plaintiff a direct order not to exit the unit, which he refused to follow. (*Id.*) The misconduct ticket was subsequently "pulled" on January 23, 2020, and not adjudicated, as Plaintiff had been instructed to leave early by "AA Dawson." (*Id.*) Plaintiff wrote a grievance against Defendant for the DDO ticket on January 14, 2020. (ECF No. 1 at PageID.8.)

On March 16, 2020, Plaintiff showered in his unit shower and exited the shower to return to his cell at approximately 5:55 a.m. Defendant was at the officer's station and, upon seeing Plaintiff, asked him for his I.D. Plaintiff responded that he did not have it as he had just left the shower. Defendant then stated, "Just to let you know you're getting a ticket for taking a shower."

3

Plaintiff responded that no rule prevented him from taking a shower and advised her that other prisoners were also showering. Defendant replied, "But you are the one who's writing grievances and shit." Defendant subsequently issued Plaintiff a class II misconduct ticket for being out of place. (*Id.* at PageID.9.) At the hearing held on March 25, 2020, the hearing officer dismissed the misconduct ticket after reviewing the video footage, which showed another prisoner getting into the shower and contradicted Defendant's statement in the misconduct report that the shower was closed. (*Id.* at PageID.10; ECF No. 19-5.)

## II. Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III. Discussion

### A.    Retaliation Claims

A plaintiff must prove the following elements to establish a prima facie case of retaliation: (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct;" and (3) the adverse action was taken (at least in part) because of the protected conduct. *Thaddeus-X v. Blatter*,

4

175 F.3d 378, 394 (6th Cir. 1999) (en banc). In addition, a plaintiff must be able to prove that the protected conduct was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Once the plaintiff has met this burden, if the defendant can show that the same action would have been taken in the absence of protected activity, the defendant is entitled to prevail on summary judgment. *Thaddeus–X*, 175 F.3d at 399; *see Smith*, 250 F.3d at 1038.

Plaintiff alleges that Defendant retaliated against him by calling him a "snitch" and by issuing him two retaliatory misconduct tickets. Defendant concedes that Plaintiff engaged in protected conduct, but contends that Plaintiff's claim fails on the second and third elements.

### 1. Adverse Action

Defendant argues that Plaintiff's retaliation claim fails to the extent it is based on his allegation that she called or labelled him a "snitch" in front of other prisoners. She does not dispute that a misconduct ticket can constitute adverse action for purposes of a prisoner's retaliation claim. *See Maben v. Thelen*, 887 F.3d 252, 267 (6th Cir. 2018).

An action is adverse if it would deter a person of ordinary firmness from engaging in that conduct. *See Thaddeus-X*, 175 F.3d at 394. Courts within the Sixth Circuit have recognized that labeling a prisoner a "snitch" or a "rat" in front of other prisoners can be sufficiently adverse to deter a prisoner from engaging in protected conduct. In *Ball v. Evers*, No. 19-10315, 2021 WL 3164273 (E.D. Mich. July 27, 2021), the court observed: "[i]t doesn't take much to conclude that calling a prisoner a snitch in the open and in front of other inmates certainly can be 'consequential.' It is widely understood that prisoners do not take kindly to those who report others to authorities." *Id.* at *9 (citing *Catanzaro v. Mich. Dep't of Corrs.*, No. 08-11173, 2011 WL 768115, at *5 (E.D. Mich. Feb. 10, 2011)); *see also Crum v. Wilkinson*, No. 2:04-CV-249, 2006 WL 64607, at *4 (S.D.

5

Ohio Jan. 11, 2006) ("Labeling plaintiff a snitch in the presence of other inmates is certainly likely to deter a person of ordinary firmness from exercising the right at stake."). In *Figel v. Suardini*, No. 2:03-CV-206, 2006 WL 1662999 (W.D. Mich. June 6, 2006), Magistrate Judge Greeley, and ultimately, Judge Edgar, rejected the defendants' argument that calling a prisoner a "snitch" or a "rat" in front of other inmates cannot be considered adverse action. Judge Greeley cited the Sixth Circuit's unreported decision in *Jackson v. Peterson*, No. 96-1144, 1996 WL 636180, at *2 (6th Cir. Oct. 30, 1996), which observed that revealing an informant-prisoner's identity could support a retaliation claim, but found no evidence in that case that the defendant had identified the plaintiff as an informant to other prisoners. He also cited *Bell v. Johnson*, 308 F.3d 594 (6th Cir. 2002), which explained that the plaintiff's burden in a retaliation case is "merely to establish the factual basis for his claim that the retaliatory acts amounted to more than a de minimis injury," and that once that showing is made, it is for the trier of fact to determine whether, under the circumstances, the alleged adverse action was capable of deterring a person of ordinary firmness from engaging in the protected conduct. *Id.* at 606 (citing *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). Judge Greeley ultimately determined that an issue of fact remained based on the plaintiff's allegations that the defendant called him a snitch in the presence of other prisoners and that he was directly threatened by other prisoners due to being labeled a snitch. 2006 WL 1662999, at *6.

  Defendant's primary argument is that Plaintiff created the risk himself because, according to Plaintiff, Defendant did not direct her comment at any particular prisoner, and several other prisoners were also on their way to chow with Plaintiff. Defendant contends that her comment did not put Plaintiff at risk because it could have been directed at any of the several prisoners who were present and did not single out Plaintiff. Thus, according to Defendant, any risk to Plaintiff

6

arose only because he asked Defendant to repeat herself, which caused the other prisoners to focus their attention on Plaintiff. Defendant further asserts that her comment does not amount to adverse action because Plaintiff merely received a threat from an unknown prisoner and was never assaulted. (ECF No. 19 at PageID.85.) Although Defendant's argument might have some appeal to a jury, I conclude that Plaintiff has presented sufficient evidence to create a genuine issue of fact as to whether Defendant's "snitch" comments constitute adverse action. According to Plaintiff's version of events, Defendant directed her comment at Plaintiff because she knew that Plaintiff had been complaining to prison officials about her conduct. While Defendant did not say Plaintiff's name, a reasonable jury could conclude that Defendant knew that her comment was likely to provoke a response from Plaintiff in front of other prisoners, and thus, increase his risk of being threatened or assaulted. Moreover, Plaintiff has presented sufficient evidence that Defendant's comments actually resulted in an implied threat, even though the kite containing the threat came from an anonymous source.[1] Therefore, I conclude that Plaintiff has met his burden of showing that Defendant's snitch comments constitute more than a de minimis injury.

    **2.**    **Causal Connection**

        **a.**    **DDO Misconduct**

Defendant argues that Plaintiff cannot establish the requisite causal connection between his protected conduct and the DDO misconduct ticket she issued on January 12, 2020, because she had a nonretaliatory basis for issuing Plaintiff the DDO misconduct. That is, Defendant notes that at the time she saw Plaintiff leaving the unit early for chow, she had not called his unit for chow and was unaware of any information that Plaintiff was in one of the groups of prisoners—those with a medical condition or a food service-related work detail—that are permitted to leave early

---

[1] Defendant's statements denying that she made the alleged "snitch" comments (ECF No. 19-3 at PageID.106) do not warrant summary judgment, as they are contrary to Plaintiff's version.

for chow. (ECF No. 19-3 at PageID.105–06.) Defendant asserts that she thus had a legitimate basis to issue Plaintiff a DOD misconduct because Plaintiff refused to comply with her order not to exit the unit. (ECF No. 19 at PageID.88; ECF No. 19-3 at PageID.106.)

Plaintiff responds that the record contains sufficient evidence to create a genuine issue of material fact with regard to causation. He contends that the temporal proximity between his protected conduct and Defendant's statements and issuance of the DDO misconduct ticket suffice to establish to establish a causal connection. (ECF No. 23 at PageID.183.) That is, Plaintiff contends that Defendant issued the misconduct ticket immediately after he advised her that he would be sure to let the warden know about her unprofessional conduct (stating that he was snitching on her) and after she commented, "not before I write the ticket." (*Id.*)

The Sixth Circuit has observed that "the temporal proximity between the prisoner's protected conduct and the official's adverse action" can provide circumstantial proof of the official's retaliatory motive. *Hill v. Lappin*, 630 F.3d 468, 475–76 (6th Cir. 2010). But it has also stated that temporal proximity, without more, is insufficient to demonstrate the requisite causal connection. *See Smith*, 250 F.3d at 1038. In *Holzemer v. City of Memphis*, 621 F.3d 512 (6th Cir. 2010), the court observed that, in general, the Sixth Circuit has been reluctant to find that temporal proximity, alone, can establish that the filing of a grievance was a motivating factor, but it acknowledged the court's statements in First Amendment cases in the employment context that "on a particular set of facts, extremely close temporal proximity could permit an inference of retaliatory motive." *Id.* at 526 (quoting *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010)); *see also Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (stating that temporal proximity may be "significant enough to constitute indirect evidence of a causal

connection so as to create an inference of retaliatory motive") (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)).[2]

Here, Plaintiff supports the causal connection element of his claim with more than temporal proximity. That is, Plaintiff alleges that when he approached the officer's desk, Defendant informed him that she knew Plaintiff had been snitching on her and that after Plaintiff told Defendant that he would advise the warden of her unprofessional conduct, she responded, "[n]ot before I write the ticket." Given this evidence, a reasonable jury could conclude that Plaintiff's protected conduct was a substantial or motivating factor in Defendant's issuance of the DDO misconduct ticket.

Accordingly, a genuine issue of material fact remains as to the issue of a causal connection.

### b. Out of Place Misconduct

Defendant also contends that Plaintiff cannot establish a causal connection with regard to the misconduct ticket that she issued to Plaintiff on March 16, 2020, for being out of place by taking a shower because Plaintiff met the criteria for the infraction under Policy Directive 03.03.105, and she did not see any other prisoners enter or exit the shower while Plaintiff was in

---

[2] As noted, Defendant concedes that "complaining to MDOC officials about her alleged behavior is protected conduct under the First Amendment." (ECF No. 19 at PageID.82.) It appears from this statement that Defendant is referring to Plaintiff's complaints prior to the January 12, 2020 "snitch" incident. On the other hand, Plaintiff asserts that his threat during the January 12, 2020 incident to let the warden know about Defendant's behavior constituted protected conduct. Whether a threat to file a grievance or engage in some other form of protected conduct can support a retaliation claim remains unsettled within the Sixth Circuit. *Compare McKinney v. Rutenbar*, No. 2:14-cv-220, 2016 WL 4144253, at *2 (W.D. Mich. Aug. 4, 2016) (concluding that it is not clearly established in the Sixth Circuit that a threat to file a grievance is protected conduct), *with Betty v. Heyns*, No. 1:15-CV-445, 2018 WL 1477577, at *2 (W.D. Mich. Mar. 27, 2018) (finding *Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009) (concluding that plaintiff's threatened grievance was "arguably protected by the First Amendment"), "not dispositive" but "persuasive" and concluding that the plaintiff's threatened grievance was "arguably legitimate"). There is no need to decide this issue, as Plaintiff's pre-January 12, 2020 protected conduct occurred only approximately 12 days prior to the incident and, thus, was sufficiently close in time to raise an inference of retaliation.

the shower. (ECF No. 19 at PageID.90; ECF No. 19-3 at PageID.106.) Defendant further notes that, while she did observe other prisoners walking around the unit while Plaintiff was in the shower, those prisoners were porters performing their assigned duties, and Plaintiff was the only prisoner out in the unit without staff authorization. (ECF No. 19-3 at PageID.107.) Defendant denies stating to Plaintiff, "but you're the one writing grievances and shit." (*Id.*)

The hearing officer found Plaintiff not guilty of the charge because the video showed that another prisoner went into the shower before Plaintiff but did not receive a misconduct. The hearing officer further noted that it appeared from the video that the unit was open because other prisoners were loitering on the base and near the kitchenette. (ECF No. 19-5 at PageID.111.) Even if Defendant's statements are credited (she had not seen another prisoner enter or leave the showers and believed that the other prisoners in the unit were performing their porter duties), Plaintiff has presented sufficient evidence to create an issue of fact regarding the causal connection element of his claim. Plaintiff alleges that after he told Defendant that other prisoners were taking showers, Defendant responded, "But you are the one who's writing grievances and shit." (ECF No. 1 at PageID.9.) Viewing this evidence in the light most favorable to Plaintiff, as is required at this stage, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014), I conclude that a disputed issue of material remains on this aspect of Plaintiff's retaliation claim.

### 3. Qualified Immunity

Defendant contends that she is entitled to qualified immunity on the portion of Plaintiff's retaliation claim based on her issuance of the false misconduct tickets. (ECF No. 19 at PageID.96.) The doctrine of qualified immunity provides that government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Dietrich v. Burrows*, 167 F.3d 1007,

10

1012 (6th Cir. 1999). An "objective legal reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The qualified immunity inquiry requires a court to decide whether the facts as alleged or shown make out a constitutional violation and whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 232. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either prong of the inquiry without regard to sequence. *Id.* at 236. As discussed above, genuine issues of fact remain as to whether Defendant retaliated against Plaintiff for complaining to prison officials and filing grievances about her alleged behavior. Filing grievances and submitting oral or written complaints to prison officials constitutes constitutionally-protected conduct that may not be the basis for retaliation, and that right was clearly established at the time of the alleged incidents in this case. *See Smith*, 250 F.3d at 1037; *Bryant v. Threlfall*, No. 2:20-cv-217, 2020 WL 6689317, at *3 (W.D. Mich. Nov. 13, 2020). Accordingly, Defendant is not entitled to qualified immunity on Plaintiff's retaliation claim.

    **B.**    **Eighth Amendment Claim**

Plaintiff alleges that Defendant's act of labeling Plaintiff a snitch in front of other prisoners constituted deliberate indifference to his safety in violation of the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). Prison

officials' conduct that involves the "unnecessary and wanton infliction of pain" is thus unlawful. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). Prisoners in state custody also have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 1977 (1994). Prison staff are thus obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). The Sixth Circuit has observed that identifying a prisoner as an informant or snitch may constitute deliberate indifference to the inmate's safety. *See Comstock v. McCrary*, 273 F.3d 693, 699 n.2 (6th Cir. 2001); *LaFountain v. Martin*, 334 F. App'x 738, 741 (6th Cir. 2009) (citing *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001) (noting that "labeling an inmate a snitch satisfies the *Farmer* standard, and constitutes deliberate indifference to the safety of that inmate")). Under *Farmer*, to establish an Eighth Amendment failure-to-protect claim, a plaintiff must establish that he reasonably fears an attack. 511 U.S. at 834; *see also Thompson v. County of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (noting that while the Sixth Circuit has held that a plaintiff asserting a personal safety claim need not demonstrate that he was actually attacked, he must establish that he reasonably feared such an attack).

Defendant contends that Plaintiff's Eighth Amendment claim fails because he never suffered an attack or physical injury. (ECF No. 19 at PageID.91–94.) Defendant cites reported and unreported Sixth Circuit cases to support her position, as well as cases from district courts within the Sixth Circuit. *See, e.g., Thompson v. Mich. Dep't of Corrs.*, 25 F. App'x 357 (6th Cir. 2002); *Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998); *White v. Trayser*, No. 10-CV-11397, 2011 WL 1135552 (E.D. Mich. Mar. 25, 2011); *Catanzaro v. Mich. Dep't of Corrs.*, No. 08-11173, 2009 WL 4250027 (E.D. Mich. Nov. 19, 2009); *Gibbs v. Ball*, No. 07-15462, 2009 WL 331604

(E.D. Mich. 2009). Plaintiff responds with his own cases supporting his contention that the threat of injury or pain, without actual physical injury or attack, can suffice to establish an Eighth amendment violation. *See*, *e.g.*, *Williams v. Gersbacker*, No. 93-1515, 1993 WL 430138 (6th Cir. Oct. 22, 1993); *Jones v. Carberry*, No. 2:08-cv-268, 2010 WL 1172562 (W.D. Mich. Mar. 24, 2010).

Cases imposing a physical injury requirement for Eighth Amendment claims draw on two sources: (1) Eighth Amendment law; and (2) the Prison Litigation Reform Act of 1996 (PLRA), which provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ." 42 U.S.C. § 1997e(e). *See Wilson*, 148 F.3d at 601 ("[A] claim of psychological injury does not reflect the deprivation of 'the minimal civilized measures of life's necessities,' that is the touchstone of a conditions-of-confinement case.") (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *Jarriett v. Wilson*, 162 F. App'x 394, (6th Cir. 2005) (noting that Section 1997e(e) applies to Eighth Amendment claims for emotional or mental damages and that while the physical injury required by the statute "need not be significant, it must be more than *de minimis* for an Eighth Amendment claim to go forward"); *Gibbs*, 2009 WL 331604, at *4 (citing Section 1997e(e) and the complaint's lack of reference to an actual physical injury as a result of the defendant labeling the plaintiff a "rat" as one ground for dismissing the plaintiff's Eighth Amendment claim).

I find it unnecessary to examine the parties' respective cases in depth because recent decisions from this Court on initial review pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A and 42 U.S.C. § 1997e(c) provide a straightforward answer to the issue of whether an Eighth Amendment personal safety claim requires a physical injury. "While a prisoner does not need to prove that he

has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack." *Dukuly v. Nuttall*, No. 1:21-cv-519, 2022 WL 292248, at *3 (W.D. Mich. Feb. 1, 2022) (citing *Thompson*, 29 F.3d at 242–43); *see also Murphy v. Sterle*, No. 1:21-cv-457, 2022 WL 292249, at *6 (W.D. Mich. Feb. 1, 2022) (same); *Success v. Macauley*, No. 1:21-cv-254, 2021 WL 5002311, at *15 (W.D. Mich. Oct. 28, 2021) (acknowledging cases requiring that a plaintiff establish an attack or physical harm as a result of being labeled a snitch to support an Eighth Amendment claim, but noting that under *Farmer*, a plaintiff need not show that he was the victim of an actual attack and instead need only show "that he reasonably fears such an attack"). Thus, under Supreme Court and Sixth Circuit precedent, a plaintiff need only show that he reasonably feared an attack to support an Eighth Amendment personal safety claim.

Because Defendant does not specifically argue that Plaintiff fails to show that he reasonably feared an attack, she has not presented a proper basis for dismissal. Even so, I note that, in light of the absence of a physical injury resulting from Defendant labeling Plaintiff a snitch, Section 1997e(e) precludes Plaintiff from recovering mental or emotional distress damages on his Eighth Amendment claim. Nonetheless, Section 1997e(e) does not necessarily preclude claims for nominal or punitive damages for an Eighth Amendment violation. *See Small v. Brock*, 963 F.3d 539, 543–44 (6th Cir. 2020). As such, I recommend that this claim proceed.

### IV.  Conclusion

For the reasons set forth above, I recommend that the Court **deny** Defendant's motion for summary judgment. (ECF No. 18.)

Dated: April 18, 2022                                                /s/ Sally J. Berens
                                                                                        SALLY J. BERENS
                                                                                        U.S. Magistrate Judge

## **NOTICE**

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).